UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DASHAWN WRIGHT,

          **Plaintiff,**

v.                                 Case No. 24-CV-373

CO AKER, *et al.*,

          **Defendants.**

**DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff DaShawn Wright, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Wright was allowed to proceed on an excessive force claim pursuant to the Eighth Amendment against defendant CO Aker for allegedly repeatedly slamming his arm in his cell door, and on an Eighth Amendment claim against various John Doe defendants for deliberate indifference to his medical needs for failing to treat his injuries or allow him to go to the hospital. The named defendant, Aker, filed a motion for summary judgment for failure to exhaust administrative remedies. (ECF No. 18.)

The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 3, 23.) The motion is fully briefed and ready for a decision.

## PRELIMINARY MATTERS

Aker, in his reply, argues that Wright failed to follow Fed. R. Civ. P 56 and Civil L.R. 56 in his response materials. (ECF No. 25 at 1-3.) Wright then filed a sur-reply (ECF No. 27), which the court construed as a motion for leave to file a sur-reply and subsequently granted (ECF No. 31). In his sur-reply Wright includes a declaration swearing to his version of the facts included in his response. District courts are entitled to construe *pro se* submissions leniently and in the light most favorable to the plaintiff. *See Grady v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). The court finds that Wright has included enough information for the court to consider Aker's motion for summary judgment on exhaustion grounds.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

2

(1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his

administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*Relevant Procedure for Exhausting Administrative Remedies*

At the Kenosha County Detention Center and Pre-trial Facility, the inmate grievance procedure is contained in the Inmate Handbook. (ECF No. 21-2.) Prisoners are first encouraged to attempt to resolve an issue informally with the appropriate staff member. (*Id.* at 9.) If informal resolution is unsuccessful or not possible, prisoners may submit an electronic grievance using the Kiosk/Tablets, or where the Kiosks/Tablets are unavailable they may submit a handwritten Inmate Grievance/Appeal Form by handing it to the housing unit officer. (*Id.*) A prisoner must submit a grievance within seven days of the incident. (*Id.*) The shift supervisor reviews the grievance and is to provide a response within seven days. (*Id.*) If the prisoner is unhappy with the shift supervisor's response, he may appeal the grievance to the grievance appeal committee within 72 hours of receiving the response. (*Id.*)

If a prisoner leaves a facility, he "may request that a grievance be responded to after [his] release from custody." (ECF No. 21-2 at 9.) The procedure states that all prisoners are required to exhaust all administrative remedies even if they are transferred to a different facility or released from custody. (*Id.*)

*Wright's Allegations and Attempts to Exhaust his Administrative Remedies*

Wright alleges that in the morning of December 15, 2023, he was in a wheelchair as Aker was escorting him to a holding cell. (ECF No. 1 at 5.) Aker then repeatedly slammed Wright's arm with the cell door, and Wright passed out from

4

the pain, bumping his head. (*Id.*) When he regained consciousness, he suspected his arm and hand were broken and requested to go to the hospital. (*Id.*) Jail medical staff refused to let him go to the hospital and refused to treat his injuries. (*Id.*)

Aker states there is no record of Wright filing a grievance regarding the December 15, 2023, incident. (ECF No. 20, ¶¶ 9, 11.) He also notes that Wright received the Inmate Handbook detailing the grievance procedure on October 10, 2023, and had submitted grievances during his stay. (*Id.*, ¶¶ 4, 10.) Wright was transferred out of the Kenosha County Pre-trial Facility the same day as the incident. (*Id.*, ¶ 3.) Aker states that, when a prisoner is released from custody or transferred to a different facility, "the procedure in place was for the inmate to submit a grievance or appeal by mailing it to the jail." (*Id.*, ¶ 7.)

Wright states that, while he was unable to file a grievance via the Kiosk system because he was transferred to another institution an hour after the incident happened, he mailed a grievance to Kenosha County once he got to Dodge; however, he received no response. (ECF No. 24 at 3.) In his response materials he submitted a partial copy of the grievance that begins to describe the events in question. (ECF No. 24-1.) Wright also states that he attempted to file a grievance through Dodge's grievance procedure, which was received by the institution complaint examiner on December 21, 2023, but it was rejected because the events did not occur at Dodge. (ECF No. 24 at 3; ECF No. 24-1 at 1, 3.)

In reply, Aker notes that "[f]or the first time, and presumably to defeat this motion, plaintiff alleges he did submit a grievance to Kenosha County by mailing a

5

copy of the grievance." (ECF No. 25 at 4.) He argues that Wright's current assertion that he mailed a grievance to Kenosha County "is contrary to the undisputed record and to Mr. Wrights [*sic*] own sworn statements in his complaint." (*Id.*) Aker further states that Kenosha County has no record of receiving the grievance. In his sur-reply, Wright explains that he was confused as to whether he could mention the grievance he sent to Kenosha County because he never received a response. (ECF No. 27 at 2.)

*Analysis*

The Seventh Circuit Court of Appeals "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). A prisoner can overcome his failure to exhaust his administrative remedies only where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). A prisoner can show that a grievance process was unavailable when "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016)).

A material question of fact exists as to whether Wright attempted to exhaust his administrative remedies with Kenosha County. If he did mail the grievance to the proper address and with the proper postage, but the grievance did not reach Kenosha County, then the failure to exhaust is not due to any fault of his and the exhaustion process is rendered unavailable. *White v. Bukowski,* 800 F.3d 392, 396 (7th Cir. 2015) However, if he did not follow the proper procedure, then he failed to exhaust his administrative remedies before filing this lawsuit. *Id.*

The Seventh Circuit has instructed that, when questions of fact exist regarding whether a prisoner exhausted the available administrative remedies, a court must conduct an evidentiary hearing to resolve the issue. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). At the hearing, the court "may hear evidence, find facts, and determine credibility. After finding facts, the district court may allow the claim to proceed or dismiss it for failure to exhaust." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (citations omitted).

The court finds that an evidentiary hearing is necessary to determine whether the grievance process was unavailable to Wright.

## CONCLUSION

For the reasons stated above, the court will schedule a status conference to discuss the logistics of an evidentiary hearing. Once the court holds the evidentiary hearing, it will issue a decision and order on Aker's motion for summary judgment.

7

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the clerk of court's office set a status conference to discuss the logistics of holding an evidentiary hearing.

Dated at Milwaukee, Wisconsin this 5th day of May, 2025.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge