DASHAWN WRIGHT,

                **Plaintiff,**

v.                                 Case No. 24-CV-373

CO AKER, *et al.,*

                **Defendants.**

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    Plaintiff DaShawn Wright, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Wright was allowed to proceed on an Eighth Amendment claim of excessive force against defendant correctional officer Aker for allegedly repeatedly slamming his arm in his cell door, and on an Eighth Amendment claim of deliberate indifference to his medical needs against various John Doe defendants for failing to either treat his injuries or allow him to go to the hospital. The named defendant, Aker, filed a motion for summary judgment for failure to exhaust administrative remedies. (ECF No. 18.)

    On May 5, 2025, the court issued an order determining that an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), was necessary to resolve the question of fact as to whether the exhaustion process was rendered unavailable to Wright. The court held the evidentiary hearing via Zoom on May 19,

2025. This order considers the testimony of the evidentiary hearing and resolves the motion for summary judgment on exhaustion grounds.

The court summarized the allegations of Wright's underlying claim, laid out the applicable standards for exhaustion, and explained the general process for exhausting claims at the Kenosha County Detention Center (KCDC) in its order requiring a *Pavey* hearing and will not repeat them here. (ECF No. 33 at 3-4.)

**SUMMARY OF TESTIMONY**

Wright testified that, while he was incarcerated at KCDC, he was familiar with the grievance process, had a lengthy history of filing grievances, but never filed a paper grievance. He only filed grievances electronically. An hour after the December 15, 2023, incident that is at issue in this case he was transferred out of KCDC to Dodge County Correctional Institution. Shortly thereafter, Wright filed a grievance about the incident through Dodge's inmate complaint process. On December 21, 2023, Wright was notified that his grievance was rejected because the incident had not occurred at Dodge.

Wright asked an unidentified correctional officer how he should handle the situation and was told he should mail his grievance to KCDC. The same day his grievance was rejected at Dodge Wright filled out a KCDC grievance form, addressed a pre-stamped envelope using the address listed on the KCDC grievance form, sealed the envelope, and placed it in his cell door for pick up by a correctional officer for mailing. Wright received no response.

In preparation for filing this lawsuit, on January 30, 2024, Wright wrote out a substantially similar copy of the grievance he had mailed to KCDC on another KCDC form using his rejected Dodge grievance as a reference. He dated the grievance January 30, 2024. Wright stated he did so because he did not have a copy of the grievance he had mailed but wanted evidence of the substance of his grievance. He took these actions because he did not know what else to do as the KCDC grievance form did not indicate what should happen when an inmate does not receive a response. He admits he did not write a letter to KCDC inquiring after the status of his grievance, and when asked why he did not call KCDC he stated that he was not allowed to call another correctional facility.

In the January 30 version of his KCDC grievance Wright stated that defendant CO Aker removed him from his cell to sign paperwork prior to his transfer to Dodge. (ECF No. 35-6 at 1.) When Aker escorted Wright back to his cell, Wright asked if he could have breakfast. (*Id.*) Aker responded that Wright already had breakfast, and the two argued briefly. (*Id.*) When Aker went to leave Wright's cell, Wright put his arm in the doorway to stop him. (*Id.*) Aker then began slamming Wright's arm repeatedly in the cell door and, when Wright attempted to use his other arm to stop Aker, Aker slammed that arm repeatedly in the door, too. (*Id.* at 1-2.) Wright was then pepper-sprayed, became light-headed, and passed out. (*Id.* at 2.) He came-to with a nurse attending him and was transferred to Dodge. (*Id.*)

Wright admits that when he filled out the complaint form for this lawsuit he indicated he had not filed a grievance at KCDC. (ECF No. 35-3 at 7.) Wright stated

3

he said he had not filed a grievance at KCDC because he was unsure if KCDC had received his grievance and he did not want to be accused of lying if he checked the box stating he had filed a grievance and there was no record of the grievance. He also explained that he did not list the January 30, 2024, version of his grievance because he was not sure it counted as a true grievance. He did indicate on the complaint form that he had filed a grievance at Dodge. (*Id.*) He also stated on the form that he could not file a grievance at KCDC because the transport van was there to take him to Dodge. (*Id.* at 8.)

Sergeant Doug Simpson, a correctional sergeant at the Kenosha County's Sheriff's Department, testified regarding the grievance process when a prisoner is transferred to another correctional institution. He stated that prisoners could submit grievances through the mail and the grievance would be treated as if it was filed when the complainant was still in KCDC's custody. When a grievance is sent by mail, a central office within the Kenosha County government building (which houses several government entities, including the Sheriff's Department) receives it and stamps it as received. The central office then determines what division or department it should be sent to and routes it to that department (in this case, the Sheriff's Department). Once a grievance is received in the Sheriff's Department, it is reviewed and a determination made as to who should receive the grievance—KCDC or the Kenosha County Jail. The grievance is then sent to the appropriate facility.

Sgt. Simpson testified that he would typically be the one to receive such grievances. Once received, he would scan it into the grievance system, log receipt,

4

coordinate investigation of the issue, adjudicate the issue, and then mail the complainant a response. Sgt. Simpson testified that it was rare to receive a grievance by mail from a prisoner who had transferred out of KCDC custody, and he has only experienced it once or twice in his career.

Sgt. Simpson further testified that he had no record of receiving a grievance from Wright regarding the December 15, 2023, incident. He noted that he did receive a letter from Wright in either June or July 2024 requesting that video footage be preserved. Sgt. Simpson could not recall ever receiving a paper grievance from Wright.

## ANALYSIS

The court finds that Wright did everything he could to attempt to exhaust his administrative remedies for the incident that occurred at KCDC. Wright has a long history of filing grievances at KCDC, so it is believable that he would make and file a grievance relating to the December 21st incident. The court notes that, while the KCDC grievance procedures state that prisoners are required to exhaust all administrative remedies even if they are transferred to a different facility, it does not specify how to do so. (ECF No. 21-2 at 9.) Wright attempted to figure out the process, first by asking a Dodge correctional officer for advice and then reviewing the KCDC grievance form he had on hand. And he sent his grievance to the address listed on the KCDC grievance form.

The court cannot account for the failure of the grievance form to arrive at the proper recipient. Given that the mail processing system for Kenosha County requires

5

at least two re-routings, it is possible that Wright's grievance got lost in the mail. The KCDC grievances procedures do not provide instructions on what an inmate who has transferred out of KCDC is to do in the event he does not receive a response to his mailed grievance. Sgt. Simpson testified that receiving mailed grievances from prisoners who have transferred out of KCDC is incredibly rare.

The court finds it credible that, in anticipation of filing this lawsuit, Wright re-wrote a copy of his grievance on January 30, 2024, that was substantially similar to the grievance he had mailed on December 21, 2023. Accepting that the January 30 copy was substantially similar to the grievance he had mailed, it is clear that, had KCDC received the grievance, it would have been put on notice of Wright's claim against Aker, which is ultimately the point of the exhaustion requirement. *See Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (quoting *Strong v. David*, 297 F.3d, 646, 650 (7th Cir. 2002) ("an inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'")

In short, Wright attempted to exhaust his administrative remedies for the December 15, 2023, incident, and the fact that he was unable to exhaust was no fault of his own. For whatever reason, despite following the appropriate procedures, KCDC did not receive the December 21 grievance. For all intents and purposes, the exhaustion process was rendered unavailable to Wright. *White v. Bukowski*, 800 F.3d 392, 396 (7th Cir. 2015). Aker's motion for summary judgment on exhaustion grounds is denied.

## CONCLUSION

For the reasons stated above, the court denies Aker's motion for summary judgment on the grounds that Wright failed to exhaust his administrative remedies. The court will issue an amended scheduling order.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Aker's motion for summary judgment on exhaustion grounds (ECF No. 18) is **DENIED**.

Dated at Milwaukee, Wisconsin this 23rd day of June, 2025.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge