---

**DASHAWN WRIGHT,**

      **Plaintiff,**

  v.                                     **Case No. 24-CV-373**

**CO AKER,** *et al.,*

      **Defendants.**

---

## DECISION AND ORDER

---

Plaintiff DaShawn Wright, who was previously incarcerated and is representing himself, brings this lawsuit under 42 U.S.C. § 1983. Wright was allowed to proceed on an Eighth Amendment claim against defendant CO Aker for allegedly using excessive force against him. He was also allowed to proceed on an Eighth Amendment claim against John and Jane Doe Kenosha Medical Staff defendants for allegedly failing to treat the injuries he sustained in his encounter with CO Aker. The defendants filed a motion for summary judgment, which is fully briefed and ready for a decision. (ECF No. 40.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 3, 23.)

## PRELIMINARY MATTERS

After the court denied the defendants' motion for summary judgment on the ground that Wright failed to exhaust his administrative remedies, the court reset the deadline to identify the Doe defendants to October 8, 2025. Wright never moved to

identify the Doe defendants. As such, they are dismissed. CO Aker remains as the sole defendant.

Aker argues that Wright's response materials are deficient and that he failed to follow Federal Rule Civil Procedure 56 and Civil Local Rule 56 when responding to his motion for summary judgment, failing to substantively dispute his proposed findings of fact. (ECF No. 66 at 1-2.) District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Wright's response materials do not formally conform with the rules, his response contains sufficient facts to allow the court to rule on Aker's summary judgment motion. As such, the court will consider the information contained in Wright's submissions where appropriate in deciding Aker's motion.

Relatedly, Wright moved the court to make a finding that his materials are appropriate and in line with the relevant rules of procedure. (ECF No. 67.) Because of the court's finding above, the court denies this motion as moot.

### FACTS

On December 15, 2023, Wright, who was housed at the Kenosha County Jail and a convicted prisoner at the time, was scheduled to be transferred to a Wisconsin Department of Corrections (DOC) prison facility. (ECF No. 42, ¶¶ 1, 6.) Aker began his shift at 6:00 a.m. that day and was told that all prisoners slated for transfer, including Wright, had already been served breakfast. (*Id.*, ¶ 6.) Wright needed to sign some paperwork related to his transfer, so at approximately 6:10 a.m. Aker went to Wright's

holding cell to let Wright out to sign the paperwork. (*Id.*) Wright told Aker he hadn't had his breakfast yet. (*Id.*, ¶ 8.) Aker responded that he had been told that all prisoners slated for transfer had already been served breakfast. (*Id.*, ¶ 9.)

According to Aker, Wright became upset and demanded that he be given breakfast. (ECF No. 42, ¶ 10.) Aker refused, stating that Wright could not be given an extra meal. (*Id.*, ¶ 11.) Aker asserts that Wright refused to return to his cell until he was given breakfast. (*Id.*, ¶ 12.) Wright "then placed his hands over the door latch and stated something to the effect that he would not let CO Aker close the door until he received another meal or was allowed to talk to a supervisor." (*Id.*, ¶ 13.) Aker ordered Wright to remove his hands so he could close the door, stating he would not give Wright another breakfast. (*Id.*, ¶ 14.) Wright continued to hold the door open with his hands. (*Id.*, ¶ 15.)

Aker continued to order that Wright remove his hands and Wright continued to refuse. (ECF No. 42, ¶ 16.) At that point, "Aker attempted to move/deflect [Wright's] hands back into his cell so he could close the door shut." (*Id.*) Wright "continued to get more resistant and agitated when CO Aker continued ordering him to move his hands and get back into the cell." (*Id.*, ¶ 17.) Aker states that, because Wright was actively resisting, he "was a significant safety and security concern as he was physically resisting and disobeying orders." (*Id.*, ¶ 18.) Aker was concerned that Wright "could engage in a fight or escalate his resistance to being physical with CO Aker or others." (*Id.*, ¶ 19.) Aker states "there was a concern that [Wright] could attempt to escape, take a hostage, or create an incident that implicated the security of the jail." (*Id.*, ¶ 20.)

Wright states that he was never served breakfast. (ECF No. 55 at 3.) He also states that, at the time he was ordered to return to his cell, he was already in the cell. (*Id*.) He asserts he "only held my right arm out the doorway so I wouldn't be locked in and forgotten about." (*Id*.) He states that Aker slammed his arm and hands with the door to get him to remove his hands, and that Aker's aggression appeared "out of the blue." (*Id*. at 3-4.)

Wright also disputes that he could be a security concern because he was using a wheelchair. (ECF No. 53 at 1.) Shortly before this incident, Wright sustained an injury caused by gunshots that shattered his tibia and fibula. (*Id*.) He states that he underwent significant surgery and at the time he was unable to stand, walk, or run. (*Id*.)

Wright and Aker were still struggling with each other when non-defendant Officer Galvan came running towards Wright's cell yelling at him to get his hands into the cell. (ECF No. 42, ¶ 24.) Wright "quickly moved his hands into his cell" and Aker was able to secure the cell door. (*Id*., ¶¶ 25-26.) No other force was needed. (*Id*., ¶ 26.) Aker states that "[t]here was no redness or any cuts on Inmate Wright's hands." (*Id*., ¶ 27.) Aker asserts that at 6:50 a.m. medical staff evaluated Wright and cleared him for transport to the DOC facility. (*Id*., ¶ 28.)

Wright states his arm swelled and he sustained "small bruises on both my arms and hands." (ECF No. 53 at 2.) He also asserts he experienced physical and mental trauma and he "believe[s] I had nerve damage because I could not fully close my hands and had numbness and sharp shooting pain as well as sore pain in my arms and hands for two months afterward." (*Id*.) Though he cites to "Document 1, Page 5 of 11" as

4

support for this assertion, the court cannot discern where in the record Wright is citing to. The court has reviewed both the signed and unsigned declarations that Wright submitted and notes that no medical records were included with these declarations. (ECF Nos. 54, 62.) The court also notes that Aker submitted a 17-second body camera video from non-defendant Officer Torres that appears to capture several officers closing Wright's cell door, but the video does not contain any relevant information. (ECF No. 47.)

### SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive

5

summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Wright claims that Aker violated his Eighth Amendment rights when he slammed his arm and hands in the cell door, using excessive force upon him. "Correctional officers violate the Eighth Amendment when they use force 'maliciously and sadistically for the very purpose of causing harm,' but not when they apply it in good faith to maintain or restore discipline." *Jackson v. Angus*, 808 Fed. Appx. 378, 382 (7th Cir. 2020) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). "Several factors are relevant in determining whether a defendant applied force in good faith or for purposes of causing harm, including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009).

The Seventh Circuit Court of Appeals has held that "[a]mong the relevant factors is the extent of the injuries caused by the defendant's use of force." *Small v. Pittman*, Case No. 24-3241, 2026 WL 2036277 at * 2 (7th Cir. July 15, 2026) (citing *Jones v. Anderson*, 116 F.4th 669, 677 (7th Cir. 2024)). "A de minimis amount of force, applied in

6

response to a legitimate security concern, does not violate the Eighth Amendment." *Id.* In *Small*, the Seventh Circuit stated that, "when a defendant presents evidence that the extent of the injury cannot 'support an inference of malice', the burden shifts to the plaintiff 'to present evidence suggesting that the incident was neither accidental nor justified, and that [the defendant] applied more than de minimis physical force.'" *Id.* (quoting *Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001)). The plaintiff in *Small* suffered from swelling and needed crutches after an officer shut his foot in a cell door. *Id.* The Seventh Circuit determined that the plaintiff's injury was de minimis and did not constitute an Eighth Amendment violation. *Id.* The Seventh Circuit noted that "Small's speculation that his injuries may have been worse than the records suggested cannot defeat summary judgment." *Id.*

Here, after the incident medical staff determined that Wright did not need medical care. Wright states that he suffered from swelling, bruising, and suspected nerve damage but, like the plaintiff in *Small*, Wright is merely speculating about the severity of his injuries. He presents no evidence that he was ever medically evaluated or treated for any injury related to this incident. Wright fails to demonstrate that the injuries he sustained were anything more than de minimis. As such, summary judgment is granted in Aker's favor.

## CONCLUSION

For the foregoing reasons, Aker's motion for summary judgment is granted. Aker also argued he was entitled to qualified immunity but, because the court found in his

favor on the merits, it does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Aker's motion for summary judgment (ECF No. 40) is **GRANTED.**

**IT IS FURTHER ORDERED** that the John and Jane Doe Kenosha County Jail Medical Staff are **DISMISSED**.

**IT IS FURTHER ORDERED** that Wright's motion for discretionary review (ECF No. 67) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot

8

extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 24th day of July, 2026.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge